Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Kieren Kishnani*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIEREN KISHNANI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>ROYAL CARIBBEAN CRUISES LTD., a Florida corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01473-SVK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen of a different State or subject of a foreign state.

2. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to, and availed itself of the benefits of transacting business in, California by, among other things, attracting individuals in California to its website. In addition, Defendant's illegal conduct is directed at and harms California residents, including Plaintiff. If not for Defendant's contacts with California, Plaintiff would not have suffered the harm alleged herein.

3. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred within this District.

## PARTIES

4. Plaintiff Kieren Kishnani ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within the Northern District of California.

5. Defendant Royal Caribbean Cruises Ltd. ("Defendant" or "Royal Caribbean") is a Liberian corporation that owns, operates, and/or controls www.celebritycruises.com ("Website"). Royal Caribbean's principal place of business is 1050 Caribbean Way, Miami, FL 33132.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the

Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## **<u>FACTUAL ALLEGATIONS</u>**

8. Royal Caribbean Cruises Ltd. is the proprietor of www.celebritycruises.com, an online platform that operates as a global cruise company running a fleet of vessels in the cruise vacation industries.

9. TikTok maintains its U.S. headquarters and a global headquarters in Culver City, California. As Vanessa Pappas, the General Manager of TikTok US explained in January 2020, "I'm excited to share that we've moved into a new home in Culver City… Located between the innovative tech companies in Silicon Beach and the streaming content companies at Hayden tract, TikTok truly sits at the intersection of technology and entertainment, physically and figuratively."[1]

10. After TikTok established its Los Angeles headquarters, Defendant partnered with TikTok for marketing, advertising, and commercial surveillance purposes, for the mutual financial benefit of Defendant and TikTok. The partnership included Defendant installing certain software on the Website designed by TikTok

[1] *See* https://newsroom.tiktok.com/en-us/growing-our-presence-in-los-angeles.

to seamlessly cause the extraction and transmission of data from every device that accesses the Website so that each person who visits the Website can be personally identified (the "TikTok Software").

11. Plaintiff visited Defendant's Website on June 25, 2024. When this visit occurred the TikTok Software had already been installed on the Website and was actively operating on the Website.

12. At all times relevant to this action, the TikTok Software, as deployed on the Website, "fingerprinted" Website visitors including Plaintiff and Class Members (defined below). Put simply, the TikTok Software as deployed on the Website collects as much data as it can about a normally and otherwise anonymous Website visitor and matches it with existing data that TikTok has acquired and accumulated about hundreds of millions of American. TikTok's massive trove includes personal data about millions and millions of Americans who have never had a TikTok account or are even aware that TikTok has detailed personal data about them.

13. When a visitor first lands on the Website, by the time a visitor is able to see the Website the TikTok Software has already fired. The TikTok Software thus gathers device and browser information, geographic information, referral tracking, and URL tracking by running code or "scripts" on the Website that send the visitor's details to TikTok. That data and information are ultimately sent to TikTok for the purpose of finding as much matching or similar data in TikTok's collection as possible. The visitor is "fingerprinted" in this manner because, just like with fingerprints, a person can be identified through matching data points.

14. Additionally, since Defendant uses TikTok's "Auto Advanced Matching" technology, the TikTok Software deployed on the Website scans every page of the Website visited for additional information about the visitor, such as name, date of birth, and address. This information is also sent to TikTok, so that

TikTok can identify visitors more efficiently. This also allows visitors to be more specifically targeted by TikTok and Defendant for marketing and advertisements in the future.

15. The below image, created by using the "Develop Tools" view of the Website offered by the browser Google Chrome, shows how the TikTok Software was being deployed on the Website at all times relevant to this action. On the left side of the image is a portion of the landing page of the Website as seen by visitors. On the right side of the image shows the TikTok Software and its scripts operating at that moment.




16. The Website therefore causes communications to be instantly and automatically sent to TikTok whenever a user lands on the Website and every time a user clicks on a page. In the example below, the right side of the image shows the various TikTok scripts running because of Defendant, as well as the transmission of

electronic impulses captured by TikTok that contain the information and data gathered about the visitor.




17. CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

18. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

19. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

20. Defendant did not obtain the express or implied consent of Plaintiff – or Class Members– to be subjected to data sharing with TikTok. At all times relevant to this action, the TikTok Software on the Website fired by the time any visitor landed on its homepage – and therefore before the visitor had any opportunity to review any banner, privacy policy, or disclosures that may have been presented by Defendant.

21. Moreover, Defendant is statutorily ineligible to assert a consent defense to its illegal use of a Trap and Trace device. Under Penal Code Section 638.51(b), a consent defense is only available to a "provider of electronic or wire communication service," which Defendant is not.

22. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq*., imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that TikTok Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication" and is not limited to telephone lines).

## CLASS ALLEGATIONS

23. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California whose identifying information was sent to TikTok as a result of visiting the Website.**

24. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

25. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a. Whether Defendant installed the TikTok Software on the Website;
b. Whether the TikTok Software as deployed on the Website is a trap and trace process as defined by California law;
c. Whether Plaintiff and Class Members are entitled to statutory damages;
d. Whether Class Members are entitled to injunctive relief; and
e. Whether Class Members are entitled to disgorgement of unlawfully obtained data.

26. TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by TikTok, Plaintiff is asserting claims that are typical of the Class.

27. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

28. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

**<u>FIRST CAUSE OF ACTION</u>**

**Violations of California Penal Code § 638.51**

**The "California Trap and Trace Law"**

29. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

30. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

31. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

32. By deploying the TikTok Software on its Website Defendant had installed and used a trap and trace device which, at all times relevant to this action, was in violation of Section 638.51(a). At all times relevant to this action, the TikTok Software as deployed on the Website captured incoming electronic impulses from the devices of Plaintiff and Class Members – impulses that "identif[ied] . . . the dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" by Website visitors, such as Plaintiff and Class members through the matching of a visitor's data carried by the

aforementioned impulses against data collected by TikTok. Defendant's The TikTok Software, as deployed by Defendant on the Website, was specifically designed for the purpose of making that identification.

33. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein, disgorgement of unlawfully obtained data, and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Reasonable attorneys' fees and costs; and
7. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: April 4, 2025

TAULER SMITH LLP

By: */s/ Robert Tauler*
Robert Tauler, Esq.

*Attorneys for Plaintiff Kieren Kishnani*

**DEMAND FOR JURY TRIAL**

Plaintiff Kieren Kishnani hereby demands a trial by jury.

DATED: April 4, 2025

TAULER SMITH LLP

By: */s/ Robert Tauler*
Robert Tauler, Esq.

*Attorneys for Plaintiff Kieren Kishnani*