1   LYNN R. FIORENTINO (SBN 226691)
    lynn.fiorentino@afslaw.com
2   SUSANNE BONIADI (SBN 341512)
    susanne.boniadi@afslaw.com
3   **ARENTFOX SCHIFF LLP**
    555 S. Flower St., 43rd Floor
4   Los Angeles, CA 90071
    Telephone:    213.629.7400
5   Facsimile:    213.629.7401

6   Attorneys for Defendant
    ROYAL CARIBBEAN CRUISES LTD.

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  KIEREN KISHNANI, individually and on
    behalf of all others similarly situated,       Case No. 5:25-cv-01473-SVK

12                              Plaintiff,          **CLASS ACTION**

13          v.                                      **DEFENDANT ROYAL CARIBBEAN
                                                    CRUISES LTD.'S MEMORANDUM OF
14  ROYAL CARIBBEAN CRUISES LTD., a               POINTS AND AUTHORITIES IN
    Florida corporation,                           SUPPORT OF ITS MOTION TO
15                                                  DISMISS PLAINTIFF'S FIRST
                                Defendant.          AMENDED COMPLAINT**
16
                                                    *[Filed concurrently with Notice of Motion,
17                                                  Declaration of Lynn R. Fiorentino and
                                                    [Proposed] Order]*
18
                                                    Date:        June 25, 2025
19                                                  Time:        9:00 a.m.
                                                    Courtroom:   Courtroom 3 – 5th Floor
20                                                  Judge:       Hon. Noel Wise

21

22                                                  Date Action Filed: February 12, 2025
                                                    FAC Filed: April 4, 2025
23

24

25

26

27

28

**TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ................................................................................- 9 -

II.     STATUTORY FRAMEWORK .........................................................- 11 -

III.    PLAINTIFF'S BOILERPLATE ALLEGATIONS .........................- 18 -

IV.     STANDARD OF REVIEW ..............................................................- 19 -

V.      THE COURT LACKS PERSONAL JURISDICTION OVER ROYAL
        CARIBBEAN.....................................................................................- 19 -

        A.    General Jurisdiction Does Not Exist Over Royal Caribbean. ...........- 20 -

        B.    Specific Jurisdiction Does Not Exist Over Royal Caribbean............- 20 -

VI.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST ROYAL CARIBBEAN........- 25 -

        A.    Plaintiff Has Not Alleged Any Injury-In-Fact And Lacks Standing.................- 26 -

        B.    The Trap and Trace Law Expressly Only Covers Communications In
              Transit And Third-Party Interception................................................- 28 -

        C.    Pen Registers and Trap and Trace Devices Are Limited To Telephones. ........- 30 -

        D.    Allowing Plaintiff's Complaint To Proceed Would Create An Untenable
              Conflict With The CCPA..................................................................- 32 -

VII.    CONCLUSION .................................................................................- 33 -

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 19

5

6

*Aviles v. Liveramp, Inc.*,
   No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025) ................................. 23, 27

7

8

*Beckles v. U.S.*,
   580 U.S. 256 .................................................................................................................. 32

9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 19

10

11

*Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco County*
   (2017) 137 S. Ct. 1773 ........................................................................................... 25

12

13

*Calder v. Jones*
   (1984) 465 U.S. 783 .................................................................................................. 21

14

*Carroll v. The J.M. Smucker Company*,
   No. 3:22-cv-08952-WHA, 2023 WL 4053796 (N.D. Cal. Jun 15, 2023) ...................... 20, 23

15

16

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) .................................................................................................... 32

17

18

*Clark v. Martinez*,
   543 U.S. 371 (2005) .................................................................................................. 17

19

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................... 26

20

21

*Compulink Management Center, Inc. v. St. Paul Fire and Marine Ins. Co.*,
   169 Cal.App.4th 289 (2008) .................................................................................... 29

22

23

*Conohan v. Gen Digital Inc*,
   No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655 (C.D. Cal. Feb. 19, 2025) ............... 20, 22

24

*Daghaly v. Blommingdales.com, LLC*,
   2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........................................................... 27

25

26

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................................. 20

27

*Digital Analyzer*, 85 F. Supp. at 200 ........................................................................... 30

28

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ............................................................................ 21

*Gabrielli v. Insider, Inc.*,
   No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) ...................... 28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .............................................................................................. 20

*In re Google Inc.*,
   No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................ 26

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) .............................................................................................. 32

*Greenstein v. Noblr Reciprocal Exch.*,
   585 F. Supp. 3d 1220 (N.D. Cal. 2022) .................................................................. 27

*Hale v. S. California IPA Med. Grp., Inc.*,
   86 Cal. App. 4th 919 (2001) .................................................................................. 29

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) ........................................................................... 21, 24

*Heiting v. Marriott Int'l, Inc.*,
   743 F. Supp. 3d 1163 (C.D. Cal. 2024) .................................................................. 20

*Helicopteros Nacionales de Colombia S.A. v. Hall*
   (1984) 466 U.S. 408 ...................................................................................... 20, 22

*Hughes v. Vivint, Inc.*,
   2024 WL 5179916 (C.D. Cal. 2024) ...................................................................... 27

*Jones v. Bloomingdales.com, LLC*,
   No. 23-3304, 2024 WL 5205528 (8th Cir. Dec. 24, 2024) ........................................ 27

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ................................................................................ 13

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) ................................................................................................ 17

*Licea v. Caraway Home Inc.*,
   No. 22-CV-1791-JGB-SHKX, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) .................. 18

*Licea v. Hickory Farms LLC*,
   No. 23STCV26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024) ............................ 31

*Lindsay-Stern v. Garamszegi*,
   2016 WL 11745948 (N.D. Cal. Oct. 13, 2016) ........................................................ 30

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

*MA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020).................................................................................. 24

*Massie v. Gen. Motors Co.*,
  2021 WL 2142728 (E.D. Cal. May 26, 2021)...................................................... 20, 23

*Matus v. Premium Nutraceuticals, LLC*,
  715 F. App'x 662 (9th Cir. 2018) ......................................................................... 21, 24

*Mejia v. Reed*
  (2003) 31 Cal. 4th 657 .......................................................................................... 12, 19

*Mendoza v. JPMorgan Chase Bank, N.A.*,
  6 Cal.App.5th 802 (2016) ............................................................................................ 27

*Mikulsky v. Noom*,
  682 F.Supp.3d 855 (S.D. Cal. 2023 .......................................................................... 24

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ......................................................................................... 30

*NovelPoster v. Javitch Canfield Grp.*,
  140 F.Supp.3d 938 (N.D. Cal. 2014) ......................................................................... 30

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ..................................................................................... 19

*People v. Avery*
  (2002) 27 Cal. 4th 49 ................................................................................................... 19

*People v. Cho*,
  No. E049243, 2010 WL 4380113 (Cal. Ct. App. Nov. 5, 2010) .............................. 14, 15, 25

*People v. Larkin*,
  194 Cal. App. 3d 650 (1987) ....................................................................................... 15

*People v. Nakai*
  (2010) 183 Cal. App. 4th 499 ..................................................................................... 13, 25, 26

*Picot v. Weston*,
  780 F.3d 1206 (2015) .................................................................................................... 23

*Powell v. Union Pac. R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012)........................................................................ 13

*Ramos v. Garcia*,
  248 Cal. App. 4th 778 (2016)....................................................................................... 29

*Rodriguez v. Fountain9, Inc.*,
  No. 24STCV04504, 2024 WL 3886811 (Cal.Super. July 09, 2024) ...................... 27

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

*Rodriguez v. Plivo Inc.*,
    No. 24STCV08972, 2024 WL 5184413 (Cal.Super. Oct. 02, 2024) ...................................... 27

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ......................................................................................... 13, 29

*Rosenthal v. Bloomingdales.com, LLC*
    (1st Cir. 2024) 101 F.4th 90 ........................................................................................ 21, 23

*Sacco v. Mouseflow, Inc.*,
    No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ..................... 25

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................................ 25

*Sanchez v. Cars.com Inc.*,
    Case No. 24STCV13201 (Cal.Super. Jan. 27, 2025) .......................................................... 32

*Sanchez v. Cars.com Inc.*,
    No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025) ....................................... 27

*Schwarzenegger v. Fred Martin Motor Co.*
    (9th Cir. 2004) 374 F.3d 797 ........................................................................................ 21, 25

*Shapiro v. United States*,
    335 U.S. 1 (1948) ........................................................................................................ 15, 30

*Smith v. Maryland*,
    442 U.S. 735 (1979) ........................................................................................................... 15

*Steilberg v. Lackner*
    (1977) 69 Cal. App. 3d 780 ............................................................................................... 12

*Tavernetti v. Superior Court*
    (1978) 22 Cal.3d 187 ........................................................................................................ 13

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
    813 F. App'x 316 (9th Cir. 2020) ...................................................................................... 24

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ....................................................................................... 26, 27

*United States v. VanDyck*,
    776 F. App'x 495 (9th Cir. 2019) ...................................................................................... 26

*Valenzuela v. Alexander Wang, LLC*,
    23STCV12422 (L.A. Superior Ct., Dec. 27, 2023) ............................................................. 13

*Vita v. New England Baptist Hosp.*,
    494 Mass. 824, 243 N.E.3d 1185 (2024) ...................................................................... 12, 32

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

*Vons Companies, Inc. v. Seabest Foods, Inc.*
(1996) 14 Cal.4th 434 ................................................................................................ 19, 20

*Warden v. Kahn*
(1979) 99 Cal. App. 3d 805 ....................................................................................... 13, 19

*Zarif v. Hwareh.com, Inc.*,
No. 23-CV-0565-BAS-DEB, 2024 WL 1268167 (S.D. Cal. Mar. 25, 2024) ........................ 22

**Statutes**

18 U.S.C. § 2258A(b)(1) ............................................................................................... 15

18 U.S.C. § 3127(3)(4) .................................................................................................. 15

Cal. Gov't Code § 8231.18(c)(3)(A)(iv) ......................................................................... 15

Cal. Penal Code § 538.51 ......................................................................................... 16, 29

Cal. Penal Code § 629 .................................................................................................. 28

Cal. Penal Code § 629.51 ...................................................................................... 16, 28, 29

Cal. Penal Code § 630.50 ......................................................................................... 16, 28

Cal. Penal Code § 631 .................................................................................... 12, 13, 14, 19

Cal. Penal Code § 632 .................................................................................... 13, 14, 25, 26

Cal. Penal Code § 637.2(a) ........................................................................................... 26

Cal. Penal Code § 638.50 ................................................................................. 28, 29, 30, 31

Cal. Penal Code § 638.51 ........................................................................................ *passim*

Cal. Penal Code § 638.52 ........................................................................................ *passim*

Cal. Penal Code § 638.53 ................................................................................. 28, 29, 30, 31

Cal. Penal Code § 638.54 ......................................................................................... 30, 31

Civ. Code § 1798.140 .............................................................................................. 12, 32

Fed. Rule Civ. P. 12(b)(2) ............................................................................................ 19

Penal Code §§ 629.51, 638.50 ....................................................................................... 16

Penal Code § 629.51(b) ................................................................................................ 16

Penal Code § 630 ........................................................................................................ 12

Penal Code § 638.51(a) ................................................................................................ 16

Penal Code § 638.52(d)(1) .......................................................................................... 16

**Other Authorities**

First Amendment .......................................................................................................... 18

Assembly Bill 929 ........................................................................................................ 15

California Consumer Privacy Act ..................................................................... 9, 11, 12, 32

California Invasion of Privacy Act ...................................................................... 9, 10, 30

CCPA § 7012(c) ........................................................................................................... 11

CIPA § 631 ................................................................................................................... 12

CIPA § 638.50 .............................................................................................................. 28

CIPA § 638.51 .............................................................................................................. 28

CIPA § 638.52 .............................................................................................................. 28

CIPA § 638.53 .............................................................................................................. 28

Federal Constitution ..................................................................................................... 19

Federal Wiretap Act ..................................................................................................... 30

Massachusetts Wiretapping Act .................................................................................... 24

Section 25, Governing Law ........................................................................................... 21

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This case is hardly unique.  It is the latest in an avalanche of cookie-cutter complaints filed by Plaintiff's counsel, Tauler Smith LLP ("Tauler Smith"), under a statute that was enacted **solely** for the purpose of **authorizing** law enforcement agencies to **intercept** the "signaling information" – but not the content – of telephone calls.[1]  What does this case have to do with court-authorized law enforcement interception of the telephone numbers called by potential criminals?  Absolutely nothing.

Instead, this case effectively seeks to criminalize the Internet through a bait and switch. That is, it concerns the **reception** – not the **interception** – of online data exchanges and common website analytics tools used by website operators, under the novel theory that these technologies amount to illegal "trap and trace" devices under section 638.51 of the California Invasion of Privacy Act ("CIPA").  How common is it for website operators to obtain "signaling information" and use analytics tools – as expressly authorized under the California Consumer Privacy Act, the actual law that governs the online privacy issues at here?  The Court's PACER website admittedly "collect[s] and store[s]" every visitor's "IP address" and the "type of browser and operating system used to access the pacer.uscourts.gov site."[2]  The Los Angeles County Superior Court, where this action was originally filed, discloses that it engages in "USER TRACKING AND DATA CAPTURE PRACTICES," expressly including the collection of "IP addresses" "to help us improve our web sites."[3]  In addition, the websites of this Court, the Santa Clara County Superior Court, and the Supreme Court of California all use Google Analytics, which allows Google to be sent the same data sets as TikTok, such as visitor browser and device information.[4] The Governor's official

---

[1]     *See* Declaration of Lynn Fiorentino ("Fiorentino Decl."), ¶ 11, Ex. J. ("AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations.  The bill will require law enforcement officers to obtain a court order").

[2]     *See* https://pacer.uscourts.gov/privacy, *see also* Fiorentino Decl., ¶ 2, Ex. A.

[3]     *See* https://www.lacourt.org/website/HO0050.aspx.

[4]     *See* https://support.google.com/analytics/answer/11593727?hl=en.  Google further publicly discloses that its Google Analytics cookie also collects various demographic data such as age range, gender, city, etc., by default.  *See* https://support.google.com/analytics/answer/9268042?sjid=4097383955495352501-NA&visit_id=638621968629060317-124154985&rd=2; *see also*

website openly incorporates a TikTok plugin,[5] and deploys Google Analytics and the Meta Pixel, the latter of which similarly allows Meta to identify specific Facebook and/or Instagram users that have visited the Governor's site.[6] Both the California Attorney General and the California **Privacy Protection** Agency – the government agencies literally tasked with protecting Californians' privacy rights, including under CIPA – also use Google Analytics and the Meta Pixel on their respective websites without any conspicuous disclosure.[7] So too does the Congressman Khanna on his official and personal websites,[8] and the U.S. Attorney's Office.[9]

Tauler Smith itself also uses Google Analytics to track visitors on its own website.[10] Indeed, Tauler Smith discloses through its website privacy policy – no differently than the thousands of other businesses this firm is pursuing – that simply "[b]y using our Website, you agree to the use of cookies on your browser" and this will entail the automatic collection of "the website you came from[], the type of browser you use, the device you connected from, the date and time of your access, and other data" including "your IP address," "your email address, phone number, and social media account information… . The cookies allow the Website to recognize you if you visit the Website again."[11] In other words, Tauler Smith publicly boasts that it is "violating" Section 638.51 of the Penal Code *exactly* as it is accusing Royal Caribbean in its template First Amended Complaint ("Compl."). See Compl. ¶ 31 (alleging that Royal Caribbean "uses a trap and trace process on its Website … because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors."). It is therefore difficult to imagine a less principled pursuit of other businesses for setup claims under a criminal law – for doing exactly what Tauler Smith is *admittedly* doing itself.[12]

---

https://www.cnn.com/2023/03/24/tech/tiktok-ban-national-security-hearing/index.html ("TikTok is not unique: the same tool is used by **US tech giants including Facebook-parent Meta and Google** *on a far larger scale*, according to Malwarebytes, a leading cybersecurity firm.) (emphasis added).

[5]    *See* https://www.gov.ca.gov/; *see also* Fiorentino Decl., ¶ 3, Ex. B.
[6]    *See* Fiorentino Decl., ¶ 4, Ex. C.
[7]    *See Id*., ¶¶ 5-6, Exs. D, E.
[8]    *See Id*., ¶ 7, Ex. F.
[9]    *See Id*., ¶ 8, Ex. G.
[10]   *See Id.* at ¶ 9, Ex. H.
[11]   *See* Fiorentino Decl., ¶ 10, Ex. I.
[12]   *See* https://www.taulersmith.com/california-invasion-of-privacy-act/ ("To win your CIPA claim, you will need to prove that the conversation was illegally recorded in the first place. In

1 Does this mean that Tauler Smith and *every level* of government in California are also

2 violating Section 638.51 of the Penal Code?  More than that, if it were a violation of Section 638.51

3 for the receiving party to "collect" the "signaling information" associated with a "communication"

4 without a court order – which is exactly Plaintiff's theory here, Compl. ¶ 29 – then tens of millions

5 of Californians violate this law every day by using Caller ID on their phones.  Ultimately, however,

6 Section 638.51 and its regulation of obscure "pen registers" and "trap and trace devices" have

7 nothing to do with the *reception* by parties to a communication *or* how public and private entities

8 operate their websites.  The California Legislature did not silently criminalize the Internet. As a

9 threshold matter, the initial issue here is whether hundreds of millions of Americans, or millions of

10 website operators like Royal Caribbean, can be haled into a California court simply because a

11 California plaintiff *targets them*.  This, of course, would turn the standards of personal jurisdiction

12 on their head.  The Court has no personal jurisdiction over Royal Caribbean, and never can based

13 on Plaintiff's express dispute concerning how Royal Caribbean operates its website generally, as

14 multiple Courts of Appeals have recently held in indistinguishable cases.

## II. STATUTORY FRAMEWORK

16 California has a first-in-the-nation comprehensive privacy law that gives consumers control

17 over their personal data – the California Consumer Privacy Act ("CCPA"), as amended by the

18 California Privacy Rights Act ("CPRA").  The CCPA addresses how businesses can use consumers'

19 information obtained online, what disclosures are required, and how such disclosures need to be

20 made. Section 7012(c) of the CCPA regulations specifically authorizes website operators to collect

21 personal information by "post[ing] a conspicuous link to the notice on the introductory page of the

22 business's website and on all webpages where personal information is collected."  Title 11, Div. 6,

23 Ch. 1 § 7012(c)(1).  If website operators like Royal Caribbean provide notice of their data collection

24 practices through a linked website privacy policy, they are permitted to collect personal information

25 of individuals visiting their website,[13] subject to an individual's (1) right to know, (2) right to delete,

---

some cases, **this will be obvious** because **the business will reveal** that they are monitoring and recording … .") (emphasis added).

[13] *See* California Privacy Protection Agency, <u>What General Notices Are Required By The CCPA? (ca.gov)</u> ("If the business doesn't give this notice, it is not allowed to collect personal information from the consumer.").

1  (3) right to **opt out**, and (4) right to non-discrimination.[14]

2      There is no claim here – nor could there be – that Royal Caribbean is not in compliance

3  with any requirements under the CCPA, the law that was enacted to specifically address online

4  privacy issues, expressly including the use of website "**cookies, beacons, pixel tags**, **mobile ad**

5  **identifiers**, or similar technology" – the exact technology Plaintiff complains about here.  Civ.

6  Code § 1798.140 (emphasis added); Compl. ¶ 14. And it "is a cardinal rule of statutory

7  interpretation that specific statutory regulations control over the general statutes." *Steilberg v.*

8  *Lackner* (1977) 69 Cal. App. 3d 780, 788.[15] As for such general statutes, Plaintiff's claim arises

9  under CIPA, a law originally enacted in 1967 – well before the Internet age – for the express

10  purpose of preventing "eavesdropping upon private communications" and "the invasion of privacy

11  resulting from the continual and increasing use" of "modern listening devices." Penal Code § 630.

12  The California Legislature wanted to prevent snooping on **private conversations**, and this is

13  Plaintiff's attempt to put old wine in a new bottle.  While Plaintiff's claim arises under Section

14  638.51, a 2015 addition to CIPA, it is critical to understand the statutory context of CIPA as a whole

15  to appreciate why Section 638.51 cannot apply to website operators.[16]

16      First, there is the "interception" prohibition under CIPA Section 631 – which applies to

17  **third-party** "wiretapping" of private communications in transit over a wire.  The California

18  Supreme Court has held that Section 631 protects against three types of harms: "[1] intentional

19  wiretapping, [2] willfully attempting to learn the contents or meaning of a communication **in**

20  **transit** over a wire, and [3] attempting to use or communicate information obtained as a result of

---

21  [14]     *See* California Consumer Privacy Act (CCPA) | State of California - Department of Justice

22  - Office of the Attorney General.  To put a finer point on it, it would be nonsensical to give consumers the independent rights to know, delete *and* opt out of the exact online data exchanges

23  at issue here, if website operators already were required to obtain *opt-in* consent to use analytics tools on their own websites in the first place.

24  [15]     Notably, in a thoughtful decision that applied this principle in a directly analogous case, the Massachusetts Supreme Court recently held that its state's comparable "wiretapping" law simply

25  does not apply to website analytics tools. *See Vita v. New England Baptist Hosp*., 494 Mass. 824, 839, 243 N.E.3d 1185, 1198 (2024) (holding that only person-to-person communications were

26  meant to be covered by such laws, *not* interactions with websites).

27  [16]     "[W]ell established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be

harmonized and have effect," and separate sections, like Sections 638.51 and 638.52 here, "must

28  be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed* (2003) 31 Cal. 4th 657, 663.

engaging in either of the two previous activities." *Tavernetti v. Superior Court* (1978) 22 Cal.3d 187, 192 (emphasis added). Critically, given CIPA's express purpose of preventing eavesdropping and as a further common-sense guardrail, Section 631 consistently "has been held to apply only to eavesdropping **by a third party** and ***not to recording*** by a participant to a conversation." *Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 811; *see also Valenzuela v. Alexander Wang, LLC*, 23STCV12422 (L.A. Superior Ct., Dec. 27, 2023) (finding that website operator is **categorically immune** from liability under Section 631 of CIPA – as "[e]mploying another to record one's conversations is the sort of conduct that would be outlawed by section ***632***," rather than section 631) (emphasis added).[17]

"A recording made by a participant **does not intercept** the message **while it is in transit**; the recording rather transcribes the message as it is being received." *Rogers*, (1975) 52 Cal. App. 3d 894, 898 (emphasis added). The key takeaway is this: under decades of binding CIPA precedent, parties to a communication do ***not intercept*** their own messages; they **receive** them. This makes perfect sense because intercepting a communication means "to stop, seize, or interrupt in progress or course **before arrival**." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). That is why it is conceptually impossible under this plain-English definition for any party to "intercept" that same communication at its destination – here, Royal Caribbean's website.

As for recording by a party, Section 632 applies to any person who "intentionally and without the consent of all parties to a **confidential communication**, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Penal Code § 632 (emphasis added). This language has uniformly been construed to prohibit one party to a *confidential* communication from recording that communication without the knowledge or consent of the other party. *Warden*, 99 Cal. App. 3d at 812. *See People v. Nakai*, (2010) 183 Cal. App. 4th 499, 519 (analyzing whether to exclude recorded **sexual** chat transcripts under Section 632, and not

---

[17] *See also Powell v. Union Pac. R. Co*., 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he **cannot be liable as a matter of law**"; further ruling by extension that a party to conversation cannot "be liable for aiding or conspiring with a third party to enable that party to listen in on the call.") (emphasis added)

Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user"); *see also People v. Cho,* No. E049243, 2010 WL 4380113, at *5 (Cal. Ct. App. Nov. 5, 2010) ("lewd or lascivious" online "chat conversations do not qualify as confidential communications for purposes of Section 632" and holding that such conversations are not protected under CIPA).

The "pen register/trap and trace" sections of CIPA were a 2015 addition against this well-settled backdrop. Specifically, the **<u>sole</u>** "purpose of this bill [was] to authorize **state and local law enforcement** to use pen register and trap and trace devices under state law, and to permit the issuance of emergency pen registers and trap and trace devices."[18] According to the bill's author:

> One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all ***outgoing* numbers from a particular telephone line**. In addition, another tool law enforcement uses is called a 'trap and trace device' which **allows them to record what numbers have called a specific telephone line**, i.e. all ***incoming* phone numbers**. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.[19]

Put simply, this law was enacted for no other reason than to *facilitate* law enforcement's ability to place such devices on **<u>telephone lines</u>** to intercept the "signaling information" of **<u>telephone calls</u>**.[20] In fact, the need for the bill arose due a conflict between federal and state law. Federal law authorized "states and local law enforcement officers to use pen registers and trap and trace devices by obtaining a court order first," but it did "not allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for states and local law enforcement officers to do so." (*Id*, p. 10.) At the time, California did not "have a state statute authorizing the use of pen registers or trap and trace devices." (*Id.*) Thus, local and state law

---

[18]    *See* Fiorentino Decl., ¶ 11, Ex. J.
[19]    *See* Fiorentino Decl., ¶ 11, Ex. J. Thus, according to the law's author, pen registers obtain information on the outgoing telephone numbers dialed, while trap and trace devices collect the incoming numbers.
[20]    Again, under the undisputed intent of this law applying to telephone calls, every person that uses Caller ID service – which is effectively everyone with phone service today – would need to obtain a court order to "collect" the "signaling information" of the calling party under Plaintiff's theory that this statute applies to parties to the communication.

enforcement agencies that utilized trap and trace devices on an emergency basis were technically in violation of federal law. (*Id.*, pp. 5-6.) Assembly Bill 929 sought to remedy that problem by creating a statutory scheme that "explicitly authorize[d] state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations."

Importantly, the Legislature copied **verbatim** the definitions of "pen register" and "trap and trace device" directly from federal law. *See* 18 U.S.C. § 3127(3)(4). Just as critically, it was also well established at the time the California Legislature copied these definitions that these devices were **strictly related to telephone lines**. *See Smith v. Maryland,* 442 U.S. 735, 736 n. 1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) ("A pen register is a mechanical device connected to a telephone number to monitor dialing activity. It registers the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced."); *In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (observing the potentially broad definitions, but holding "it appears from the construction of related sections of the statutes governing trap and trace devices that **they include only devices that are attached to a telephone line**.") ("*Digital Analyzer*").[21] There is unsurprisingly not a single reference in the legislative history of this law having any impact on the parties to a communication, let alone anything about websites or online privacy.  In fact, other laws enacted before and after Section 638.51 *mandate* the collection of the "signaling information" of website visitors in various circumstances. *See, e.g.,* Cal. Gov't Code § 8231.18(c)(3)(A)(iv) ("A business shall produce an audit trail detailing … [t]he Internet Protocol address of the party performing the action."); *see also* 18 U.S.C. § 2258A(b)(1) (mandating that service providers report information related to suspected child sexual exploitation, including "the electronic mail address, Internet Protocol address, uniform resource locator, … or

---

[21]    It is a well-settled rule of statutory construction that the Legislature "must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." *Shapiro v. United States*, 335 U.S. 1, 16 (1948).  In other words, the Court needs to assume here that the Legislature was aware that these definitions were consistently interpreted to be limited to telephone lines, and did not reach any further, when they enacted this law.

other identifying information" of the applicable website user). It would be absurd to conclude that the Legislature intended for businesses to simultaneously *violate criminal law* in order to comply with their other legal obligations.

It is also not surprising that the regulation of these devices (not) at issue here builds off the definitions of "wire communication" and "electronic communication" that are **expressly limited** "to the **interceptions** of wire and electronic communications." Penal Code §§ 629.51, 638.50 (emphasis added). That is, the definitions employed in Sections 538.51-53 relevant here "have the meanings set forth in subdivision (a) of Section 629.51," *id.* § 630.50, which again, "applies to the **interceptions** of wire and electronic communications. It **does not apply** to stored communications or stored content." Penal Code § 629.51(b) (emphasis added); *see also id.* § 629.51(c) ("The act that added this subdivision **is *not intended* to change the law as to stored communications or stored content**.") (emphasis added). And as established above, a party to a communication legally cannot intercept it, but only *receive* it. The Legislature's intent that this law does *not* apply to parties is *expressly incorporated* into its foundational definitions.

Similarly reinforcing that this law only applies to *third* parties (and particular ones at that), rather than parties to a communication, Sections 538.51-53 only encompass two distinct entities: **communications service providers and law enforcement**. That's it. Specifically, Section 538.51 – which incorporates the definitions limited to interceptions – provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Penal Code § 638.51(a). Subsection (b) of 638.51 provides certain exceptions **only for** "[a] provider of electronic or wire communication service" – such as to provide such services or with the consent of the user. *Id.* at 638.51(b)(1)-(5).

Sections 638.52 and 638.53, in turn, only apply to "a peace officer" and their ability to "make an application to a magistrate for an order … approving the installation and use of a pen register or a trap and trace device." Any such order issued by a magistrate **must identify** "the person to whom is leased or in whose name is listed **the telephone line** to which the pen register or trap and trace device **is to be attached**." Penal Code § 638.52(d)(1); *see also id.* § 638.52(d)(3) (the order "shall specify" the "physical location of the **telephone line** to which the pen register or

trap and trace is to be attached"). Only communications service providers and law enforcement officers are expressly within the scope of this "interception" statute. While communications service providers can obtain consent to install or use these signaling interception devices, that is not a defense available to a party to a communication under this statute, such as the millions of Californians that use Caller ID service to "trap" the signaling information of who is calling them. And only peace officers can apply for a court order to install or use such devices, provided the specific **telephone line** is identified. The statutes at issue here thus do not even contemplate *any* application to a party to any communication, let alone to website operators **comprehensively** regulated by the CCPA.

And this is the critical point that a few courts are missing: under the plain terms of Sections 638.51-53, **only** communications service providers are authorized to use these devices - *if they* meet one of the enumerated exceptions in 638.51(b), or law enforcement agents, *if they* get a court order via the statutory sections that limit their application **to telephone lines**. But if one takes the incorrect first turn that this law applies to parties, then you would run into the **inescapable problem** that there is **nothing** in Section 638.51 that would **authorize** a party to a communication to merely collect the originating number of the person who is calling them, the email address of the person sending them a message, or the IP address of the website they are visiting. *And* one would then have to assume that the Legislature not only intended to *criminalize* the use of Caller ID service, email, Internet Protocol communication, *and* anyone's ability to use the services of California's technology and social media companies, but they intended this result **entirely in silence**. With due respect to the limited number of judges that reached a different result "at the pleading stage," this is not a "broad" interpretation of a consumer protection statute. This is a facially absurd interpretation of a criminal law – and the Supreme Court has consistently instructed the lower courts that this is exactly how one should *not* interpret such laws. "A court must consider the necessary consequences of its choice [and] if one of them would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 380 (2005) (Principles of statutory interpretation require that acts of a legislative body receive uniform interpretation, regardless of whether the law is invoked in an administrative, civil, or criminal case); *see also Leocal v. Ashcroft*,

543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."). Defendant respectfully submits that interpreting Section 638.51 as Plaintiff invites would criminalize all forms of modern communications **without any defense** available to parties to a communication, and this interpretation would run headlong into the First Amendment.

## III.  PLAINTIFF'S BOILERPLATE ALLEGATIONS

Plaintiff is by all appearances a professional plaintiff working with Tauler Smith to allegedly visit websites, do nothing more, and then have identical[22] "Trap and Trace" complaints filed on his behalf.

Royal Caribbean, for its part, is a Florida corporation that allegedly operates "www.celebritycruises.com ("Website")." Compl. ¶ 5.[23]  Plaintiff merely alleges that he "visited Defendant's website after the TikTok Software was installed and within the limitations period" – and that's it. *Id.* ¶ 9.  Royal Caribbean has no alleged presence in California, and nor does Plaintiff allege he interacted with anyone through the Website.  *See* Compl.  There is also no allegation that Plaintiff purchased anything from Royal Caribbean, i.e., there is no allegation that Defendant purposefully directed any activity into California **related to** his claim.

Further, there is not a <u>single</u> allegation in the Complaint suggesting that Royal Caribbean operates the "TikTok Software" allegedly deployed on its website in a manner that would target California residents in any unique way.  *See* Compl.  Rather, Plaintiff alleges that the TikTok Software that is the sole basis of his claim collects data "***on*** the Website" regarding "an otherwise **anonymous visitor**" and "matches it with existing data TikTok has acquired and accumulated

---

[22]     "Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. This case reached that point, **and then blew past it**." *Licea v. Caraway Home Inc.*, No. 22-CV-1791-JGB-SHKX, 2023 WL 1999496, at *6 (C.D. Cal. Feb. 9, 2023) (emphasis added).  This is how Judge Bernal has characterized similar cookie-cutter CIPA lawsuits filed against hundreds of companies that simply operate standard websites.

[23]     Celebrity Cruises, Inc. is part of the Royal Caribbean Group of cruise line companies, but is a distinct legal entity.  Thus, references to Defendant's or Royal Caribbean's website here reflect Plaintiff's allegations, and should not be construed as a concession that Defendant operates or controls the identified website.

about **hundreds of millions of Americans**." *Id.* ¶ 10 (emphasis added).  In other words, Plaintiff is expressly complaining about the *general* operation of Royal Caribbean's *nationally-available* website – which does not in any way target California residents.  Finally, Plaintiff does not allege that he suffered *any* injury from the collection of the "otherwise anonymous" information *his device* disclosed to the Royal Caribbean website.

## IV.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(2) is not limited to the pleadings and the plaintiff bears the burden of establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In resolving a 12(b)(6) motion, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" only if the plaintiff pleads **facts – not conclusions** – that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by **mere conclusory statements**, **do not suffice**." *Id* at 678 (emphasis added). In addition, the Court not only needs to interpret Section 638.51 consistent with the overall statutory framework, *see Mejia v. Reed* (2003) 31 Cal. 4th 657, 663, but also construe **any ambiguities** in favor of Royal Caribbean given that Plaintiff seeks to enforce a penal law.  *See People v. Avery* (2002) 27 Cal. 4th 49, 58 ("ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise"); *Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 814, 818, n.3 (as a penal statute, ambiguity in Section 631 should be interpreted narrowly).

## V.    THE COURT LACKS PERSONAL JURISDICTION OVER ROYAL CARIBBEAN

A California court's assertion of personal jurisdiction over a nonresident defendant comports with the requirements of the due process clause of the Federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate traditional notions of fair play and substantial justice. (*Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434, 435.)  To establish minimum contacts, either general or specific

jurisdiction can be used. (*Id*. at p. 445.) "General jurisdiction" exists where a defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over the defendant in all matters, while "specific jurisdiction arises when a defendant's contacts with the forum give rise **to the claim in question**." *Helicopteros Nacionales de Colombia S.A. v. Hall* (1984) 466 U.S. 408, 414–416.

### A. General Jurisdiction Does Not Exist Over Royal Caribbean.

For a corporation, the paradigm forum for the exercise of general jurisdiction is the place in which the corporation is fairly regarded as "at home," meaning (1) its place of *incorporation;* and (2) its *principal place of business*. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, Royal Caribbean is a Florida corporation with no alleged presence in California. Compl. ¶ 5. Therefore, Royal Caribbean cannot be said to be "at home" in California for purposes of conferring general jurisdiction, as it is not incorporated in or have its principal place of business in California.

### B. Specific Jurisdiction Does Not Exist Over Royal Caribbean.

Given the lack of general jurisdiction, Plaintiff must show that specific jurisdiction exists. Plaintiff cannot because his claim does not arise out of any activity CuriosityStream *purposefully directed at Plaintiff in California*. Courts have dismissed website operators for lack of personal jurisdiction in "wiretapping" lawsuits filed in California for the same reason – including in response to Tauler Smith's template CIPA complaints. *See Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024) ("Because the law is clear that a defendant cannot be sued in any forum where its website is visible, ... and because Heiting has not shown that Marriott operated its website in a manner that specifically targeted California, the Court holds that Heiting has failed to establish that Marriott expressly aimed its actions at the forum."); *see also Conohan v. Gen Digital Inc,* No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at *2 (C.D. Cal. Feb. 19, 2025) (granting motion to dismiss CIPA complaint on personal jurisdiction grounds after finding plaintiff could not establish that "the defendant **'individually targeted' a plaintiff** in that specific forum."); *Carroll v. The J.M. Smucker Company*, No. 3:22-cv-08952-WHA, 2023 WL 4053796, *5 (N.D. Cal. Jun 15, 2023) (same); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, *6 (E.D. Cal. May 26, 2021).

In fact, two Courts of Appeals similarly held that it would violate due process for an out-of-state defendant to be haled into court to face "wiretapping" claims because website analytics tools *generally* deployed on a company's website do not *specifically* target any particular state, and therefore specific jurisdiction is lacking. *See Rosenthal v. Bloomingdales.com, LLC* (1st Cir. 2024) 101 F.4th 90, 93; *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192 (3d Cir. 2024); *accord Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018). That's exactly this case.

The starting point, then, is for Plaintiff to show that Royal Caribbean "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 802. Where, as here, Plaintiff's claim sounds in tort rather than contract, analysis of purposeful direction, rather than purposeful availment, is appropriate. *Id.* To show purposeful direction, Plaintiff must plead facts to satisfy the "effects test": Royal Caribbean must have "(1) committed an intentional act, (2) **expressly aimed at the forum state**, (3) causing harm that [Royal Caribbean] knows is likely to be suffered in the forum state." *Id.* at p. 803 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (emphasis added); *Calder v. Jones* (1984) 465 U.S. 783. If Plaintiff can satisfy this test (which he cannot), Plaintiff must then tie his claim to that purposefully directed act to establish jurisdiction. *Id.*

Plaintiff's apparent theory of personal jurisdiction is based on the conclusory assertion that Defendant's website is "attracting individuals in California to its website. In addition, Defendant's illegal conduct is directed at and harms California residents" Compl. ¶ 2. While it is facially unclear what Plaintiff means by "direct at … California residents," presumably Plaintiff means Royal Caribbean offering its cruise line services to customers.[24] Such a conclusory allegation, even accepted as true, cannot support specific jurisdiction over a non-resident business where the product

---

[24] Notably, the Website is subject to its Terms of Use, which provide in relevant part that all disputes related to it "shall be governed by and construed in accordance with the laws of the State of Florida. *See* Section 25, Governing Law, available at https://www.royalcaribbean.com/terms-and-conditions/digital-terms-of-use-and-end-user-license-agreement. Any dispute that cannot be resolved informally or through arbitration is subject to the exclusive jurisdiction of the state or federal courts of Florida. *Id.* Section 26. Thus, the individuals Royal Caribbean in fact "engages with" – its actual customers, and not Plaintiff – are agreeing that their relationship with Defendant is governed exclusively by Florida law, and not any other state's, including California's.

1    or service placed into commerce is **not** the basis of Plaintiff's claim.  *See Helicopteros, supra*, 466

2    U.S. at p. 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant

3    a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action

4    **not related to those purchase transactions**.") (emphasis added); *see also Zarif v. Hwareh.com,*

5    *Inc.*, No. 23-CV-0565-BAS-DEB, 2024 WL 1268167, at *4 (S.D. Cal. Mar. 25, 2024) ("Plaintiff

6    has not alleged she ordered any products from Defendant's website, and even if she did, the harm

7    she suffered was not premised on the sale … of a product. Rather, her mere browsing and use of

8    Defendant's website is the basis for her complaint.").[25]

9        The reality is that the only "targeting" that occurred was *by Plaintiff* to set up this claim.

10   Plaintiff alleges he visited an out-of-state company's general website, which he then alleges

11   incorporates "software created by TikTok on its website to identify website visitors."  Compl. ¶ 9.

12   This is akin to someone *calling you*, your phone collects that person's telephone number, and then

13   *they* try to sue you across the country. Plaintiff's Complaint has nothing to do with Royal Caribbean

14   *targeting California*, let alone Plaintiff, but the general operation of Royal Caribbean's *national*

15   website. Plaintiff's own allegations make this abundantly clear: "the TikTok Software collects as

16   much data as it can about an otherwise **anonymous visitor** to the Website and matches it with

17   existing data TikTok has acquired and accumulated about **hundreds of millions of Americans**."

18   *Id.* ¶ 10 (emphasis added).  Plaintiff is unambiguously complaining about the *general* operation of

19   Royal Caribbean's website for every website visitor across the country, rather than anything

20   *targeting* California residents.[26]

21

22   [25]    Plaintiff will likely rely on the Ninth Circuit's inapposite *Herbal Brands* decision where
         the defendant's *sales through its website* were causing the plaintiff's alleged injury.  But as the

23       court in *Gen Digital* recently held in dismissing Tauler Smith's form complaint, "*Herbal Brands*
         is only instructive as to the deficiency of Plaintiff's allegations. … Plaintiff does not even allege

24       that he availed himself of Defendant's services as the plaintiff did in *Herbal Brands*."  *Gen
         Digital Inc*, 2025 WL 864655, at *2.

25   [26]    Plaintiff's sole amendment to the Complaint appears to be setting up a bait-and-switch to
         focus on where *TikTok* has office space.  But that is irrelevant to Defendant *targeting Plaintiff as*

26       *a California resident*.  Simply put, Defendant is not TikTok's realtor and did not purposefully
         direct where this third party would have its office. In any event, based on publicly available

27       information, TikTok has its data centers in Northern Virginia and Oregon, and not in California.
         *See* TikTok's Data Center Locations and use of Oracle Cloud - Dgtl Infra.  Thus, the actual data

28       flows that Plaintiff is likely to bring up in his Opposition do not even touch California.  And on
         top of that, as another court correctly observed in dismissing a cookie-cutter "trap-and-trace"
         complaint, "downstream use of data is not a part of the definitions of pen registers or trap and

Numerous courts have held in indistinguishable cases that exercising personal jurisdiction over Royal Caribbean would violate due process here under indistinguishable circumstances. For example, in *Massie*, a California federal court held that *General Motors* was not subject to personal jurisdiction in California because "Plaintiffs' claims arise from and relate to session recording software allegedly installed on GM's **nationally accessible websites**, software that GM licensed and used outside California, which allegedly assisted Decibel's interception of interactions with GM's websites." *Massie, supra*, 2021 WL 2142728, *6 (holding that "GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction.") (emphasis added). Similarly, Judge Alsup held that The J.M. Smucker Company was not subject to personal jurisdiction in California in a suit involving the *general* deployment of the Meta Pixel on its nationally accessible website – even though Meta is indisputably a California corporation, just like TikTok. *J.M. Smucker Company, supra*, 2023 WL 4053796, *4 (holding that complaint concerning general operation of website could not satisfy purposeful direction, and given theory, no jurisdictional discovery was warranted).

Further, the First Circuit recently became the first federal appellate court to address the exact issue presented here: whether a nationally accessible website's use of analytics software creates specific personal jurisdiction for wiretapping claims in any state where the plaintiff visited the website. The First Circuit concluded that it does not. *Bloomingdales.com, LLC, supra*, 101 F.4th at 97. Rather, it held that Ohio-based Bloomingdales.com did not *intentionally target* its website and its accompanying use of analytics software at users in Massachusetts, given that it was not "intentionally operating its website – and the accompanying" analytics software, in a manner *specifically targeted at Massachusetts* residents. *Id.* The plaintiff therefore failed to establish

---

trace devices. It is the method of data collection itself that is at issue." *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal.Super. Jan. 28, 2025). Point being, what happens to data after it is collected is legally irrelevant to the claim. And that collection is admittedly occurring outside of California on an *anonymous* basis, and therefore not targeted at California residents in any unique way. Plaintiff's anticipated reliance on TikTok having an office in California is the type of "random, fortuitous, or attenuated" contacts with the forum state that the Ninth Circuit has found do not give rise to personal jurisdiction – even where the defendant had a contract *with a California plaintiff. Picot v. Weston*, 780 F.3d 1206 (2015)) (confirming no jurisdiction over out-of-state defendant even where he traveled to California for weeks at a time to give presentations related to the parties' contract, but a "substantial connection" was lacking).

1    specific personal jurisdiction over Bloomingdales.com for alleged violations of the Massachusetts

2    Wiretapping Act and Massachusetts Invasion of Privacy Statute. *Id.*

3          The Third Circuit followed suit last September in another case directly on point, affirming

4    that Papa John's – which operated nearly 100 brick-and-mortar pizzerias in the state – was still not

5    subject to personal jurisdiction in Pennsylvania in connection with a "wiretapping" claim "because

6    Papa Johns did not expressly aim Session Replay Code at Pennsylvania." *Hasson, supra*, 114 F.4th

7    at 188. That's because "a defendant does not expressly target a forum merely by operating a

8    website that is accessible there—even when the plaintiff alleges harm in that forum arising out of

9    his engagement with that website." *Id.* at 190; *accord MA Multimedia, LLC v. Wanat*, 970 F.3d

10   1201, 1210 (9th Cir. 2020) (affirming no personal jurisdiction over website operator in California

11   because website "lacks a forum-specific focus."); *see also ThermoLife Int'l, LLC v. NetNutri.com

12   LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) (affirming dismissal for lack of personal jurisdiction

13   based on a "highly interactive" website and product sales unconnected to Plaintiffs' claims). "If

14   [Royal Caribbean] can be haled into California merely on the basis of its universally accessible

15   website, then, under [Plaintiff's] proposed rule, it can be haled into every state, and respectively,

16   every online advertiser worldwide can be haled into California." *Matus, supra*, 715 F. App'x at

17   p. 663. This is why Californian courts have likewise repeatedly dismissed similar CIPA claims

18   against website operators for lack of personal jurisdiction. For example, in *Mikulsky v. Noom*, the

19   Southern District of California dismissed a CIPA claim for lack of specific personal jurisdiction

20   where, among other reasons, Plaintiff's allegations that Noom "knows that many users visit and

21   interact with Noom's website while they are physically present in California…and Defendant knew

22   that its practices would directly result in collection of information from California citizens"

23   "fail[ed] to show conduct directly targeting the forum state" because "Plaintiff fail[ed] to include a

24   single allegation detailing how [Noom's] 'interactive website' is targeted at California." 682

25   F.Supp. 3d 855, 867–68 (S.D. Cal. 2023). Like *Noom*, Plaintiff's Complaint contains "no

26   allegations detailing the level of interactivity of [Royal Caribbean] website," "no allegations

27   regarding whether [Royal Caribbean] use of [the pen register or a trap and trace device] specifically

28   targets California users" and "no allegations showing that [Royal Caribbean website] specifically

targets Californians." *Id.* at 868.[27]

Put simply, operating a nationwide website available to users in California does not constitute express aiming at California, and that is all Plaintiff alleges, or could allege, here related to his claim. Ultimately, there is a reason that there is not a single well-pled allegation that would support the exercise of jurisdiction over Royal Caribbean here: because none exists. What Plaintiff is specifically complaining about is the *general* operation of Royal Caribbean's website and its alleged use of the TikTok Software. And by Plaintiff's own admission, this is occurring on a *national* level, without any purposeful direction toward California. Compl. ¶ 10. Plaintiff's template Complaint is therefore ultimately self-defeating, as it expressly shows that Royal Caribbean does *not* aim any of its alleged conduct at issue at California – such that it is legally impossible that Plaintiff's claims can be deemed to "arise[] out of or relate[] to the defendant's forum-related activities." *Schwarzenegger, supra*, 374 F.3d at p. 802. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco County* (2017) 137 S. Ct. 1773, 1781. Accordingly, Royal Caribbean asks the Court to dismiss this action for lack of personal jurisdiction, with prejudice.

## VI.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST ROYAL CARIBBEAN.

As previewed above, the foundational definitions, legislative intent, and overall statutory framework make it legally impossible that a website operator can be liable under Section 638.51. Indeed, to put the absurdity of Plaintiff's theory into perspective, under binding appellate decisions interpreting CIPA Section 632, a party to a communication can ***disclose*** the **actual content** of a communication exchanged over the Internet ***without any consent***. In fact, this is true even when one party to a conversation expects it to remain private, such as in *Nakai* and *Cho* above, where the

---

[27]    *See also Sacco v. Mouseflow, Inc.*, No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (finding no "express aiming" necessary for specific personal jurisdiction where an alleged recording of an individual's visit to a nationally available website and collection of their personal data "would have occurred no matter the state Plaintiff was in"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 515–16 (C.D. Cal. 2021) (finding no personal jurisdiction in California over session replay provider in wiretapping lawsuit relating to use of session replay tool on nationally accessible website because the plaintiff "failed to allege facts showing FullStory expressly aimed its conduct toward California").

parties recorded were engaged in *sexual conversations* with individuals who were posing as 12-year-old girls to catch pedophiles. *See*, *e.g.*, *Nakai*, 183 Cal. App. 4th at 518-19.[28]  But under Plaintiff's theory, these "predator catchers" couldn't even **collect** the otherwise anonymous "signaling information," such as a phone number, email or IP address, associated with the underlying communication, the *content* of which they were, again, free to broadcast to the world. Any law that would permit a party to freely *disclose* the substance of a message that itself would identify the sender directly, but you would face **jail time** for merely *collecting anonymous* signaling information, wouldn't survive a rational basis review, let alone more restrictive scrutiny.

## A.  <u>Plaintiff Has Not Alleged Any Injury-In-Fact And Lacks Standing.</u>

Plaintiff's Complaint should be dismissed on the threshold ground that he never alleges *any* concrete injury stemming from his alleged visit to the website, which is a both statutory requirement for any claim under CIPA, as well as a jurisdictional requirement under Article III.  *See* Cal. Penal Code § 637.2(a) ("Any person who has been **injured** by a violation of this chapter may bring an action against the person who committed the violation") (emphasis added).  Indeed, in a case directly addressing the use of the technology ostensibly at issue here, the Ninth Circuit reiterated decades of precedent that "people do not have a subjective expectation of privacy in … the addressing information" associated with their communications.  *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008).  And even if they did, "it would not be one that society is prepared to recognize as reasonable." *Id.*  The Court of Appeals then expressly held that "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses." In short, Plaintiff cannot have suffered any injury here as a matter of law when there can be no legitimate expectation of privacy in the metadata associated with visiting a commercial website. Put another way, there cannot possibly be a close common law analogue here when there is zero legitimate expectation of privacy with the exact devices and signaling information  - under this binding Ninth Circuit precedent directly on point. *See also United States v. VanDyck*, 776 F. App'x

---

[28]    *See also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (holding there is no "objectively reasonable expectation that [plaintiffs'] email communications were 'confidential' under the terms of section 632."); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018) (rejecting claim that "internet-based communications can be considered 'confidential' under CIPA").

495, 496 (9th Cir. 2019).[29]

In fact, in nearly identical "wiretapping" cases, both the Ninth and Eighth Circuits independently ruled recently that allegations that a website collects and shares information regarding an individual's visit fails to establish any "injury in fact that is concrete, particularized, and actual or imminent." *See Daghaly v. Blommingdales.com, LLC*, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024); *Jones v. Bloomingdales.com, LLC*, No. 23-3304, 2024 WL 5205528, at *4 (8th Cir. Dec. 24, 2024) (affirming dismissal of website-analytics invasion of privacy claims because plaintiff "has not plausibly alleged that she suffered a concrete injury, and so she lacks standing to bring these suits. We do so not because we think she experienced only a slight invasion of her privacy, ... but because her allegations do not plausibly suggest that she suffered **any such invasion at all**.") (emphasis added).  Indeed, lack of injury was precisely one of the grounds for dismissal recently adopted in a cookie-cutter "trap and trace" case filed by Plaintiff's counsel.  *See Hughes v. Vivint, Inc*., 2024 WL 5179916 (C.D. Cal. 2024) (holding identical complaint lacks any well-pled allegations of injury, and "[e]ven if Plaintiff was more specific in alleging what information of hers was collected by the TikTok Software, her arguments regarding the harm associated with her invasion of privacy would still be flawed."); *see also Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal.Super. July 09, 2024) ("Plaintiff fails to allege a concrete injury-in-fact.").  Except for the caption, this case is no different.

In short, "[s]tanding is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal.App.5th 802, 809 (2016). Here, merely visiting a public website can hardly cause any concrete injury from its collection of admittedly *anonymous* data.  *cf. Greenstein v. Noblr*

---

[29]    In what likely explains the flood of Trap and Trace cases moving to federal court, the state courts of California have been routinely dismissing these cases now, but relying on the Ninth Circuit's *Forrester* decision to do so.  *See, e.g., Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal.Super. Jan. 28, 2025) (adopting reasoning of *Forrester* and further noting that court's own website – and websites generally – "track the IP addresses of their visitors."); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *5 (Cal.Super. Jan. 27, 2025) ("even if, arguendo, the collection of Plaintiff's IP address constitutes operation of a pen register, Plaintiff has no reasonable expectation in the privacy of her computer's IP address since she chose to access the Website."); *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal.Super. Oct. 02, 2024) (dismissing form CIPA complaint and further denying leave to amend).

1  *Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1228 (N.D. Cal. 2022) (no injury, and thus no standing,

2  even where data breach involved *personal information*). Ultimately, Plaintiff never even attempts

3  to allege any injury in his boilerplate Complaint, and that is sufficient by itself to dismiss this case

4  because he cannot make out a *prima facie* case for the Court to assert jurisdiction over it.  *See*

5  *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025)

6  (dismissing trap-and-trace complaint with prejudice because lack of any harm associated with

7  collection of anonymous metadata "cannot be cured with an amendment.").

### B.  The Trap and Trace Law Expressly Only Covers Communications In Transit And Third-Party Interception.

10  As established above, the "wire communication[s]" and "electronic communication[s]"

11  ostensibly encompassed by CIPA Sections 638.50-53 "have the meanings set forth in subdivision

12  (a) of Section 629.51."  Penal Code § 638.50.  Section 629.51, in turn, expressly limits these

13  definitions "to **the interceptions** of wire and electronic communications. It does not apply to stored

14  communications or stored content."  *Id.* § 629.51(b) (emphasis added).  In fact, Section 629 as a

15  whole is exclusively related to *law enforcement* **interception** of the **content** of communications,

16  subject to court approval, while Sections 638.50-53 address law enforcement **interception** of the

17  signaling information, "but not the contents of a communication."  *Id.* § 630.50(b),(c).  In other

18  words, the only way to read these statutes consistently is that Sections 638.50-53 are expressly

19  meant to build off of Chapter 629 to fill in the limited gap of law enforcement's prior lack of a

20  statutory mechanism to obtain the *telephone numbers* relevant to a criminal investigation, rather

21  than the *content* of a criminal suspect's telephone calls.

22  This interpretation is further compelled by the fact that the *only* entities encompassed by

23  these provisions of CIPA are **non-parties**: the communications service providers and peace officers

24  who would be working together to install these devices on target telephone lines.  Again, consent

25  is **only** a defense for the *communication service provider*, not a party to the communication under

26  this statute.  Penal Code § 638.51(b)(5).  Put differently, parties to a communication don't have

27  **any express defense** to the use of pen registers or trap and trace devices.  So either the California

28  Legislature silently criminalized the practice of tens of millions of Californians that use Caller ID

service and the millions of websites that obtain "signaling information" to operate, or this law only applies to interceptions – **which is exactly what Section 629.51(b) states**.  In short, this law has no application to parties to a communication.

Independently, while Section 638.51 states that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53," the only persons who *can* get a court order are "peace officers."  No one else.  *See* Cal. Penal Code. §§ 638.52-53.  Thus, these provisions should be read in harmony: the "persons" referred to in Section 638.51 are those persons who can "first obtain[] a court order pursuant to Section 638.52 or 638.53" – which again, are **only peace officers**.[30]  Put another way, the scope of persons subject to this law is qualified by their ability to obtain a court order.  And this is the only interpretation that comports with the legislative intent and history behind this law, which as detailed above, was enacted *solely* to *authorize* law enforcement to use these devices.[31]

Ultimately, it is clear from these incorporated definitions expressly limiting their application to law enforcement **interception** that this law cannot apply to a party like Royal Caribbean on one end of a purported "communication."  Indeed, a "trap and trace device" is defined as "a device or process that ***captures*** … the originating number or other dialing" information.  Cal. Penal Code § 638.50(c) (emphasis added).  And the primary definition of "capture" is to "take by force or stratagem; take prisoner; seize: ***The police*** *captured the burglar.*"[32]  Simply put, the Legislature adopted language that is plainly synonymous with third-party interception.  It chose "capture," *not* "collect" or "receive."  And it is well-settled through plain English and 50 years of CIPA precedent that a party to a communication legally cannot "intercept" it.  *See*, *e.g.*, *Rogers*, 52 Cal. App. 3d at 898 ("a recording made by a participant **does not intercept** the message **while it is in transit**").  Put differently, the (non-existent) communication Plaintiff had on Royal Caribbean's

---

[30]     *See Ramos v. Garcia*,  248 Cal. App. 4th 778, 785 (2016) ("A statute should not be read in isolation, 'but construed in context and 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'") (citing *Compulink Management Center, Inc. v. St. Paul Fire and Marine Ins. Co.*, 169 Cal.App.4th 289, 296 (2008)).

[31]     *See Hale v. S. California IPA Med. Grp., Inc.*, 86 Cal. App. 4th 919, 924 ("language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance") (2001).  Further, because this is a penal law, any ambiguity should be interpreted in favor of Royal Caribbean here.

[32]     *See* https://www.dictionary.com/browse/capture (emphasis added).

1  website reached Royal Caribbean – there is no dispute about that.  The "offending code" is

2  admittedly "installed *on its* Website."  Compl. ¶ 9. (emphasis added).  Interception, however,

3  cannot occur unless a *third party* somehow "halt(s) the transmission of the messages to their

4  intended recipients."  *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 952 (N.D. Cal.

5  2014).  Conversely, "once an [electronic communication] has been received by the destination

6  server, **a communication becomes 'stored'** and contemporaneous interception is no longer

7  possible.")  *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (N.D. Cal. Oct. 13, 2016)

8  (emphasis added).  Indeed, in a directly analogous case, the Third Circuit held that website

9  operators do not violate either the Federal Wiretap Act *or* CIPA through their use of analytics

10  cookies, precisely because "the California Act does not apply when the alleged interceptor was a

11  party to the communications."  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 (3d Cir.

12  2016).  As the party operating its website, Royal Caribbean could never "intercept" any

13  communications with its own website as a matter of law.

14  **C.**  **Pen Registers and Trap and Trace Devices Are Limited To Telephones.**

15  Plaintiff's Complaint should be dismissed with prejudice on the independent ground that

16  there is no support in Sections 638.50-54, when read as a whole, that this law applies beyond

17  telephonic communications – both voice (wire communication) and text (electronic

18  communication).  Indeed, that such devices are limited to equipment that can be attached to

19  telephone lines – and only telephone lines – was the consistent interpretation of the courts when

20  the Legislature adopted these same definitions from federal law.  *See*, *e.g.*, *Digital Analyzer*, 85 F.

21  Supp. at 200.  And under Supreme Court precedent, the Legislature "must be considered to have

22  adopted … th[is] construction … and made it a part of the enactment."  *Shapiro,* 335 U.S. at 16.

23  This is the only reasonable interpretation when CIPA's pen register provisions are read as a whole.

24  As established above, the only way a court order for the use or installation of such devices can be

25  issued is if the "peace officer" specifically **identifies** "the person to whom is leased or in whose

26  name is listed **the telephone line** to which the pen register or trap and trace device **is to be**

27  **attached**."  Penal Code § 638.52(d)(1); *see also id.* § 638.52(d)(3) (the order "**shall specify**" the

28  "physical location of the **telephone line** to which the pen register or trap and trace is to be

attached"); *see also id.* § 638.54(b)(1) (only contemplating the "person owning or leasing the line to which the pen register or trap and trace device is attached"). If there is no telephone line being targeted, no court order can be issued to use these devices. And the *entire* point of this law was to "authorize[] state and local law enforcement to use pen register and trap and trace devices under state law," subject to court approval and oversight.[33] It would be absurd for the Legislature – itself using the same technology on its websites – to intend that this law should also be applied to websites and the Internet, but then draft the statutes governing the court orders necessary to use these devices in a way that would make this result ***impossible***. Conversely, if the Legislature had intended this law to apply to the website operators, thus impacting a huge swath of economic activity, with the added risk of imprisonment, one would expect that it would reference the Internet at least *one time* in either the statutory text or legislative history. But the Legislature didn't do so. **Not once**. Instead, as established above, the Legislature was expressly operating with the understanding and intent that pen registers obtain information on the ***outgoing* telephone numbers** called or texted, while trap and trace devices collect the ***incoming* numbers** for calls or texts.

When these statutes are read together and as a whole, Sections 638.50-54 are limited to telephonic communications (in transit), and have no application to the Internet or websites. Judge Pfahler recently dismissed another boilerplate trap-and-trace complaint, "strongly disput[ing]" that website operators could be in violation of this law every time a visitor voluntarily visited their websites.[34] *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024) ("the court also finds public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator."). Likewise, Judge Murillo also recently held that "'pen register' and 'tra[p] and trace devices' refer to devices or process that are used to record or decode dialing, routing, addressing or signaling

---

[33]    *See* Fiorentino Decl., ¶ 11, Ex. J.

[34]    Suffice it to say that the Internet would literally not work unless IP addresses and other "signaling information" are exchanged automatically between an individual visitor and the destination website. It is therefore not hyperbole to state that Plaintiff's interpretation of this law would criminalize the Internet, because, again, the only entities who have defenses are communications service providers, and no other entity – including website operators and consumers.

information **from telephone numbers, and not internet communications such as websites**."
*Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 at 4 (Cal.Super. Jan. 27, 2025); *see also Vita*, 494 Mass. at 839 (Massachusetts Supreme Court holding that Rule of Lenity mandated that its state's comparable wiretapping laws could only be applied to person-to-person communications, and *not* website analytics technologies at issue here).

### D. Allowing Plaintiff's Complaint To Proceed Would Create An Untenable Conflict With The CCPA.

The CCPA *comprehensively* regulates data collection and sharing practices Plaintiff complains about. "Personal information" covered by the CCPA is defined to include "**Internet or other electronic network activity information** … and **information regarding a consumer's interaction with an internet website application**," Civ. Code § 1798.140, *exactly* the information Plaintiff is complaining about here. As the CCPA explains, "[b]usinesses can collect information about you in several ways. … [A] business may use cookies or web beacons to record the browser you used to visit the business, … or your IP address. The business collects information about the actions you take online, including via smart devices."[35] Businesses need only provide notice, typically through a privacy policy, "at the point businesses collect your personal of the types of information they are collecting and what they may do with that information."[36] Consumers have data rights, including the right to delete their data and the right to ***opt out*** of its collection.[37] Penal laws must give fair notice of what is punishable.[38] To be enforceable, laws must establish standards for the public that are sufficient to guard against arbitrary enforcement. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). Here, arbitrary enforcement would result given that every website collects IP addresses and metadata, and every level of the California government is using the same tools on their websites. These data collection practices are permissible under the CCPA, the actual

---

[35] *See* https://privacy.ca.gov/protect-your-personal-information/what-is-personal-information/#:~:text=Fortunately%2C%20California%20law%20gives%20us,your%20household%2C%20directly%20or%20indirectly.

[36] *See* https://oag.ca.gov/privacy/ccpa#:~:text=3.,and%20certain%20types%20of%20information. (last accessed January 24, 2025).

[37] *See* https://oag.ca.gov/privacy/ccpa#sectionb. (last accessed January 24, 2025).

[38] *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Beckles v. U.S.*, 580 U.S. 256, 262 (penal laws that "encourage arbitrary and discriminatory enforcement" are unconstitutional).

law that occupies this area, and not Section 638.51 that has no application here.

**VII.** **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice. As detailed above, the Court lacks personal jurisdiction over Royal Caribbean as they relate to Plaintiff's claim. Independently, Plaintiff could not have possibly suffered any concrete injury by merely visiting the Royal Caribbean website, Section 638.51 cannot apply to website operators as a matter of law, and any further amendment would therefore be futile.

Respectfully submitted,

Dated: April 18, 2025                         **ARENTFOX SCHIFF LLP**

By:/s/ Lynn R. Fiorentino
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
Royal Caribbean Inc.